[Cite as *Dague v. Dague*, 2013-Ohio-4292.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| KELLY J. DAGUE, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-L-091** |
| KENNETH M. DAGUE, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 10DR000630.

Judgment: Affirmed.

*Sandra A. Dray*, Sandra A. Dray Co., L.P.A., 111 Mentor Avenue, Painesville, OH 44077 (For Plaintiff-Appellee).

*L. Bryan Carr*, Carr, Feneli & Carbone Co., L.P.A., 1392 S.O.M. Center Road, Mayfield Heights, OH 44124 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from a final decree in a divorce proceeding before the Lake County Court of Common Pleas, Domestic Relations Division. Appellant, Kenneth M. Dague, contests the trial court's rulings on the issues of spousal support and payment of attorney fees. Regarding both issues, he primarily contends that the trial court erred in calculating the extent of his yearly income.

{¶2} Appellant and appellee, Kelly J. Dague, were married for roughly ten years

and resided in Lake County. Although the couple did not have any children during their marriage, three children lived with them in the marital residence. Two of the children were appellee's daughters from a prior marriage, while the third was her adopted son. Until the three children were emancipated, appellant provided some support for them.

{¶3} Throughout their marriage, appellant was the primary wage earner for the couple. Specifically, appellant worked as a journeyman wireman electrician for various union locals in northeastern Ohio and the state of West Virginia. As a union member, he would be assigned by the locals to perform electrical work for private companies at construction sites. During the mid-2000's, appellant's work was fairly consistent, and he was able to earn over $84,000 one year. However, toward the end of the decade, the consistency of his work decreased, he received unemployment compensation on some occasions, and the amount of his yearly income diminished.

{¶4} In addition to the work from the union locals, appellant often supplemented his income by performing small "side" jobs for acquaintances or family members. Even though the extra income was helpful to the couple during periods in which appellant was unemployed, neither party kept records of the supplemental work. Appellant also received compensation for driving a limousine on the weekends, but this part-time work ended by the late 2000's.

{¶5} Prior to the marriage, appellee was able to hold a full-time job and earn as much as $16,000 a year. However, while she was married to appellant, appellee never maintained full-time employment. Her most consistent position was a two-year stint with a retail store, during which she worked 14 hours per week and earned approximately $5,000 per year. According to appellee, she could have worked additional hours at the

2

store, but appellant did not want her to be away from their home any longer. Eventually, appellee was dismissed from the retail store when she was accused of stealing.

{¶6} Although appellee had a few other short-lived jobs with private companies, her primary occupation during the marriage was doing odd jobs for various individuals whom she knew. For example, she would assist some senior citizens in obtaining their groceries or cleaning their homes. The amount of income she received from this type of work was minimal.

{¶7} The parties separated in September 2010, within one month after appellee lost her position with the retail store. Appellee immediately instituted the divorce action, and appellant filed a counterclaim. During the ensuing year, appellee did not make any concerted effort to find steady employment. Instead, she continued to perform the low-paying odd jobs. As the justification for her inactivity, appellee maintained that she had certain allergies which limited the type of jobs she could hold.

{¶8} An evidentiary hearing on the merits of both divorce claims was scheduled for early September 2011. On the date of the hearing, the parties were able to reach a settlement of all pending issues, except for the payment of spousal support and attorney fees. The settled issues were subsequently incorporated into the final divorce decree. The final hearing on the spousal support and attorney fees was then re-scheduled before a court magistrate for late September.

{¶9} During that hearing, both sides presented considerable evidence as to the extent of appellant's yearly income throughout the latter half of their marriage. In regard to 2011, appellant testified that he had only worked in three of the nine months, and had been collecting unemployment compensation for the remainder of the year. He further

3

testified that, during those three months of work, he was earning between $1,200 and $1,300 each week; however, he did not submit any documentation to support this part of his testimony. As to the issue of appellee's attorney fees, she introduced evidence showing that she had incurred fees totaling $8,413.70 in litigating the action.

{¶10} In her written decision, the magistrate found that appellant's yearly income was $60,000, while appellee's yearly income was $6,318. In calculating appellant's figure, the magistrate averaged his total income over the five-year period from 2006 to 2010. However, the magistrate did not include in her calculation any of his income from 2011. Based upon these figures, the magistrate held that appellant should be required to pay spousal support to appellee in the amount of $1,500 per month for a period of 44 months. As to the issue of attorney fees, the magistrate held that appellant should pay for $5,000 of appellee's attorney fees. In support of this holding, the magistrate noted that appellee did not receive any liquid assets as part of the property distribution, that appellant's income was substantially larger than appellee's, and that appellee was also obligated to pay attorney fees to prosecute a separate domestic violence case against appellant.

{¶11} Appellant objected to both of the magistrate's primary findings. After conducting an oral hearing on the objections, the trial court issued a separate judgment ruling in favor of appellant. Concerning spousal support, the trial court agreed with the magistrate that it was appropriate not to consider his 2011 income for it to be considered in determining his average income. The trial court further held that the magistrate should have only averaged appellant's last three years of income, since they gave a better indication of his present earning ability. Accordingly, the trial court

4

concluded that appellant's average income was only $55,755, and that he should only be required to pay $1,200 per month in spousal support.

{¶12} As to the issue of attorney fees, the trial court found that it was improper for the magistrate to have considered the prosecution of the domestic violence action as a relevant factor. The court further emphasized that appellee's present lack of sufficient funds was due primarily to her lack of effort in trying to find a permanent job. Despite this, the court still held that, given the discrepancy between their respective incomes, appellant should pay $2,103 of appellee's attorney fees for the divorce action.

{¶13} Three months after rendering its judgment of the objections, the trial court incorporated the foregoing two orders into the final divorce decree. In appealing from the latter entry, appellant has assigned the following as error:

{¶14} "[1.] The trial court erred in its decision, awarding the appellee $1,200 per month in spousal support and in its analysis of the appellant's and appellee's income levels.

{¶15} "[2.] The trial court erred in finding appellant liable for a portion of appellee's attorney fees."

{¶16} Under his first assignment, appellant submits that the trial court's factual finding concerning the amount of his annual income, for purposes of determining his spousal support obligation, was contrary to the evidence. Specifically, he contends that the trial court failed to accord proper weight to the fact that his yearly income has been declining as a result of his periods of unemployment. In support of this point, appellant places heavy emphasis upon the court's decision not to consider his testimony as to the extent of his 2011 income.

5

{¶17} At the outset of our analysis, it must be reiterated that the trial court gave greater weight to appellant's periods of unemployment than did the court magistrate. A review of the trial transcript establishes that the periods of appellant's lack of electrician work occurred more often in 2008, 2009, and 2010. In determining an average annual income for appellant, the magistrate predicated her calculations on the five-year period beginning in 2006. However, the trial court concluded that the five-year period was too broad, and limited its calculations to the three-year period beginning in 2008.

{¶18} Without acknowledging this finding in his favor, appellant asserts that the trial court erred in not including his 2011 income in its calculation of his average yearly income. As the basis for its decision not to consider 2011, the trial court indicated that, since the evidentiary hearing was held in September 2011, any information concerning his 2011 income was incomplete. The court also noted that, even though appellant was released from his latest job in September 2011, it was still possible that he could obtain another job before the end of the year.

{¶19} As a general proposition, it is acceptable to predicate a determination of a party's annual income upon an average derived from a reasonable prior period of time. *Davis v. Davis*, 11th Dist. Geauga No 2011-G-3018, 2013-Ohio-118, ¶72. Under this method of calculating annual income, the focus is not upon the amount of a party's income at one particular moment in time. Rather, the determination is based upon the party's general earning capability over a substantial period of time.

{¶20} The trial testimony establishes that appellant experienced periods of unemployment over the past three years and that his income had decreased as a result. The testimony also indicates that appellant's period of unemployment was slightly

6

longer than in the prior three years. Nevertheless, because appellant also had three months of relatively steady employment during 2011 and there were three months remaining in that year, the trial court could justifiably conclude that appellant's income for the first nine months of 2011 was an anomaly, and that the prior three-year period was a better indicator of appellant's earning capability. For this reason, the trial court did not abuse its discretion in holding that appellant's partial 2011 income should not be included in determining his average annual income.

{¶21} As a separate argument regarding his income, appellant argues that the trial court placed too much emphasis on his relative earning capability in determining the amount of spousal support. As to this point, the record shows that, as part of her trial testimony, appellee stated that appellant specifically placed a limit upon the amount of hours she could work outside the home. In light of this, the trial court could justifiable hold that, despite the relatively short duration of the marriage, appellee should continue to benefit from appellant's earning capabilities because he had limited her ability to establish her own career.

{¶22} As a final issue under his first assignment, appellant asserts that the trial court erred in finding that appellee's yearly income was $12,230. As part of her original findings, the trial court magistrate held that an annual income of only $3,180 could be attributed to appellee. However, in ruling upon appellant's two basic objections, the trial court held that, given the minimal effort appellee made to find work while the divorce case was pending, her yearly income should be increased to minimum wage. Appellant now maintains that her income should have been determined to be $16,000, the amount she earned before the parties were married.

7

{¶23} In relation to this point in objecting to the magistrate's finding as to appellee, appellant never expressly argued that her yearly income should be found to be $16,000. Rather, in arguing for a figure higher than the amount found by the magistrate, he only referred to the "minimum wage" figure. Hence, to the extent that the trial court granted appellant the relief he sought, he was waived the ability to challenge the trial court's finding in the context of this appeal.

{¶24} Taken as a whole, the record contains competent, credible evidence supporting the trial court's findings as to the amount of the parties' respective annual incomes. Furthermore, in light of the two findings, the spousal support order of $1,200 per month was reasonable under the facts of this case. *See Davis*, 2013-Ohio-0211, at ¶87. Appellant has not demonstrated any error in the trial court's spousal support determination. His first assignment is without merit.

{¶25} Under his second assignment, appellant submits that the facts of this case did not support the conclusion that he should be required to pay any part of appellee's attorney fees. First, he argues that the evidence showed that he did not have sufficient funds to pay part of her fees. Second, he contends that, since appellant received the sum of $100,000 as part of the property distribution, she had sufficient funds to pay all of her attorney fees.

{¶26} Pursuant to R.C. 3105.73(A), the trial court has the authority in a divorce action to require one party to pay all or a portion of the opposing party's attorney fees if it is equitable to do so. The statute further provides that the court should predicate its determination upon all relevant factors, including the parties' marital assets and income. In applying the statute, this court has stated that the decision to award attorney fees lies

within the sound discretion of the trial court. *Dilley v. Dilley*, 11th Dist. Geauga No. 2010-G-2957, 2011-Ohio-2093, ¶86.

{¶27} As to the extent of appellant's income in this case, the trial testimony was sufficient to show that he was capable of paying approximately one-fourth of appellee's attorney fees. Although appellant testified that he had again become unemployed as of the date of the evidentiary hearing in September 2011, the record further showed that, despite the periods of unemployment, appellant would ultimately find new employment through the local unions for electricians. In other words, there is nothing to indicate that appellant would never be called back to work. In addition, the testimony established that, even when appellant's employment was sporadic, he still made considerably more than appellee. To this extent, appellant's assertion that he lacked the funds to pay the fee order is not supported by the evidence in the record.

{¶28} As to appellee's ability to pay all of her own attorney fees, while the record confirms that appellee was awarded the sum of $100,000 as part of the distribution of the marital assets, it further indicates that this award consisted entirely of her portion of appellant's retirement benefits. Accordingly, appellee could not have immediate access of the funds in question. Moreover, even though the testimony demonstrated that appellee received a monthly sum of $435 in rental income, she expressly testified that all of those funds had to be "put back" into the property.

{¶29} Given the respective assets and earning capabilities of the two parties, the requirement that appellant pay the sum of $2,103 in attorney fees for appellee was not arbitrary or unreasonable. Therefore, the trial court acted within the scope of its sound discretion in awarding attorney fees in favor of appellee. Appellant's second

9

assignment also lacks merit.

{¶30} Pursuant to the following, appellant's two assignments of error are not well taken.  Thus, it is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.

TIMOTHY P. CANNON, P.J,

DIANE V. GRENDELL, J.,

concur.